**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL STOCKDALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06-CV-25 CAS |
| | ) | |
| CHUCK DWYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This prisoner action under 42 U.S.C. § 1983 is before the Court on defendants' motion for summary judgment. For the following reasons, the motion for summary judgment will be granted.

**Background**.

Plaintiff Michael Stockdale, an inmate in the custody of the Missouri Department of Corrections, filed this action alleging violations of his First, Fourth and Fourteenth Amendment rights. Plaintiff alleges in his Amended Complaint that his rights were violated at the Southeast Correctional Center ("SECC") when Chuck Dwyer, former superintendent of SECC, issued an order on April 8, 2005 which directed that all of plaintiff's incoming and outgoing legal mail be opened, inspected and read outside of plaintiff's presence. The Amended Complaint alleges that:

> defendant Chuck Dwyer did not have a lawfully obtained Search Warrant to seize plaintiffs [sic] legal mail and thus had no probable cause to have plaintiffs [sic] In-coming and Out-going clearly marked legal mail seized by the Mail Room Supervisor, nor to give his permission to any other prison official to open, inspect and read plaintiffs [sic] In-coming and Out-going legal mail.

Amended Complaint at 2, ¶ 3.[1]

---

[1]Prior to plaintiff's filing of the Amended Complaint, the Court advised plaintiff that "an amended complaint supersedes the original and renders the original complaint without legal effect,"

The defendants in this action are Dwyer and Larry Crawford, Director of the Missouri Department of Corrections. The defendants move for summary judgment on the grounds that (1) the directive for plaintiff's mail to be opened did not violate either plaintiff's constitutional rights or Missouri Department of Corrections policy, (2) the directive did not interfere with plaintiff's right to counsel or access to the courts, (3) the directive did not violate the Fourth Amendment, (4) plaintiff's claims against defendant Crawford are barred by the doctrine of respondeat superior, and (5) the defendants are entitled to summary judgment based on the principles of qualified immunity.

**Legal Standard**.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing

---

and as a result "the allegations of the original complaint may not supplement any deficiencies in the amended complaint." See Order of July 28, 2006 at 2 (Doc. 17). Plaintiff's original complaint contained allegations concerning his receipt of a conduct violation, placement in Administrative Segregation, and recording of his telephone conversations with an attorney, which were not included in the Amended Complaint. Because the Amended Complaint renders the original complaint moot, see In Home Health, Inc. v. Prudential Insurance Co., 101 F.3d 600, 603 (8th Cir. 1996), and plaintiff was so informed before the Amended Complaint was filed, the Court does not consider the omitted allegations.

there is a genuine dispute on a material factual issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); <u>Herring v. Canada Life Assur. Co.</u>, 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Herring</u>, 207 F.3d at 1029 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. <u>See</u> <u>Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." <u>Armour and Co., Inc. v. Inver Grove Heights</u>, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

**<u>Findings of Fact</u>**.

As a preliminary matter, Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute

exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

The defendants submitted a statement of uncontroverted material facts in compliance with Rule 4.01(E). Plaintiff did not respond to any of the defendants' statements of material fact but instead submitted his own statement of uncontroverted material facts. Four of the seven numbered paragraphs of plaintiff's statement of material facts cite the Amended Complaint as the portion of the record which supports the alleged facts. See Pl.'s Opp., Statement of Material Facts at 2, ¶¶ 1-5. The Amended Complaint was not verified or signed under penalty of perjury, however, and therefore the Court does not consider it as an affidavit or other admissible evidence in response to defendants' motion for summary judgment. This Court "must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993); cf. Roberson v. Hayti Police Dept., 241 F.3d 992, 994-95 (8th Cir. 2001) ("Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion.")

As a result, for purposes of summary judgment the Court deems admitted defendants' statement of material facts, except to the extent those facts have been controverted by other statements of fact or affidavits submitted by plaintiff. The uncontroverted facts as submitted by defendants and adopted by this Court are as follows:

Plaintiff Michael Stockdale, #1086521, is currently incarcerated at Eastern Reception & Diagnostic Correctional Center located in Bonne Terre, Missouri. Stockdale was previously confined at SECC located in Charleston, Missouri. Defendant Chuck Dwyer is the former superintendent of SECC. (Defs.' Ex. A, Affidavit of Chuck Dwyer ("Dwyer Aff."), ¶ 1). Defendant Larry Crawford is the current Director of the Missouri Department of Corrections.

<u>The April 2005 Mail Incident</u>

During the course of an internal investigation, SECC Investigator Steve Julian received information from an informant which led him to believe that Stockdale was circumventing the mail system within SECC. (Defs.' Ex. B, Letter from Steve Julian, Investigator II dated August 24, 2005; Dwyer Aff., ¶ 4). During approximately the second week of April 2005, Julian met with defendant Dwyer about the official investigation Julian was conducting on Stockdale. (Dwyer Aff., ¶ 3). Julian notified defendant Dwyer about the information he had gathered from an informant. (Dwyer Aff., ¶ 4; Defs.' Ex. B).

Based on information from the informant, Julian believed Stockdale was attempting to hide information related to an internal investigation by supplying documentation and possibly other contraband to inmates within the Missouri Department of Corrections ("MDOC") as well as outside agencies. (Defs.' Ex. B; Dwyer Aff., ¶ 4). Julian informed defendant Dwyer that Stockdale was sending out non-legal material using the legal mail process. (Defs.' Ex. B). Prison officials believed that Stockdale was placing his information and contraband inside envelopes and addressing them as "legal" mail. (Dwyer Aff., ¶ 4). When an inmate attempts to send non-legal mail through the legal mail process, the inmate is trying to avoid the institution's screening process and such conduct is "automatically consider[ed] . . . a security threat." (Dwyer Aff., ¶ 6).

Julian asked defendant Dwyer for permission to open the envelope Stockdale had marked as "legal" mail in order to verify the information he had received from the informant. (Dwyer Aff., ¶ 7). Dwyer granted Julian permission to open the envelope. (Dwyer Aff., ¶ 8). The envelope, marked as "legal," was opened outside of Stockdale's presence. Inside the envelope there were two stamped smaller letters of a non-legal nature. One letter was addressed to a media organization and the other to a member of Stockdale's family. (Dwyer Aff., ¶ 9; Defs.' Ex. C, Stockdale Conduct Violation Report, dated April 12, 2005; Defs.' Ex. D, Stockdale Disciplinary Report, dated April 14, 2005). For his actions, Stockdale was issued a conduct violation #20, Disobeying an Order. (Defs.' Ex. C).

<u>The Directive Issued by Dwyer</u>

Subsequently, Dwyer issued a directive requiring that all of Stockdale's mail marked as "legal" be opened and examined to determine if it was of a privileged or legal nature. (Dwyer Aff., ¶ 10). The directive required that inspections of Stockdale's mail occur in Stockdale's presence. (Dwyer Aff., ¶ 11; Defs.' Ex. E, Inter-Office Communications Regarding Stockdale's Mail File, dated April 2005-June 2005). The content of Stockdale's mail was examined to determine it was of a legal nature. If the mail was not legal, Stockdale would be issued a conduct violation. (Dwyer Aff., ¶ 12; Defs.' Ex. E). If the mail was legal, it was to be re-sealed and returned with a cover letter to the mailroom for further processing. (Dwyer Aff., ¶ 12, Defs.' Ex. E).

The directive was effective from April 2005 until Stockdale left SECC in June 2005. (Dwyer Aff., ¶ 13). Under the directive, all examinations of Stockdale's mail occurred in his presence. (<u>Id.</u>, ¶ 11). Documentation was made via inter-office communications ("IOCs"). The IOCs indicated the date, time, and the SECC staff who inspected Stockdale's mail. (<u>See</u> Defs.' Ex. E).

<u>Stockdale's Grievance SECC-05-975 and Responses</u>

Stockdale filed a grievance, SECC-05-975, after he was transferred to the Eastern Reception and Diagnostic Correctional Center. (Defs.' Ex. F, Stockdale Grievance SECC-05-975). On October 20, 2005, Steve Long, Assistant Director of the Division of Adult Institutions, responded to Stockdale's grievance appeal, stating in part: "[Y]our legal mail should not have been opened without your presence. Be advised action will be taken to ensure procedural compliance in the future in regard to legal mail." (Defs.' Ex. F at 1). Long also found that Stockdale was properly issued and found guilty of the conduct violation based on his attempt to circumvent the mail procedure by mailing non-legal material under the guise of legal material. (Id.)

### IS13-1.1, Offender Mail Procedure

IS13-1.1 governs how offender mail is processed throughout MDOC. Section I states in part, "IS13-1.1 was established to ensure that offender mail is handled in an efficient and equitable manner." (Defs.' Ex. G, IS13-1.1, Offender Mail Procedure, eff. date Feb. 7, 2005). "An offender's mail, while important, must be controlled to ensure the safety and security of the institutions and the public." (Defs.' Ex. G at 1). Under IS13-1.1 Section III.E., all offender mail being sent out of the institution must be delivered to the mailroom unsealed, with the exception of privileged mail which may be sealed. (Id. at 5).

All outgoing mail, except privileged mail, is examined or read for unauthorized items, threats to institutional security, the safety of employees or offenders, and evidence of illegal activity. (Id. at 5). Mail marked as privileged may be examined if reasonable suspicion exists to indicate that inappropriate materials are concealed within the mail or that the mail is not privileged mail. (Id. at 6). Reasonable suspicion is defined in the policy as, "When the observations, experience, training and education of a person causes a determination to be made that inappropriate materials are concealed

within privileged mail." (<u>Id.</u>, Section II.H. at 2).  The staff member wishing to examine the privileged mail must obtain approval from the superintendent and the examination should take place in the offender's presence.  (<u>Id.</u>, Section III.E. at 6).

Under IS13-1.1, Section II.F., privileged mail is defined as "[m]ail being sent to, or received from, consulates, judges, attorneys, courts, elected and appointed state officials, sheriffs, chief administrative officers, associates/assistants and central office section heads."  (<u>Id.</u> at 3).

**<u>Discussion</u>**.

**A. Qualified Immunity**.

The defendants move for summary judgment, including on the basis of qualified immunity. Under qualified immunity, governmental officials are immune from suit for civil damages unless their conduct is unreasonable in light of clearly established law.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987).  In the qualified immunity context, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity will not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury."  <u>Harlow</u>, 457 U.S. at 815 (quoting <u>Wood v. Strickland</u>, 420 U.S. 308, 322 (1975)).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (internal quotations omitted).

"[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." Brockinton v. City of Sherwood, Ark., No. 06-3293, slip op. at 6, __ F.3d __ (8th Cir. Oct. 4, 2007) (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)) (internal punctuation omitted).

Qualified immunity claims are analyzed in two steps. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, viewing the facts in the light most favorable to the plaintiff, courts ask whether the official's conduct violated a constitutional right. See id. If the answer is no, 'there is no necessity for further inquiries concerning qualified immunity.' Id. If the answer is yes, however, courts must determine "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006) (citing Saucier, 533 U.S. at 201-02).[2]

---

[2]The Eighth Circuit recently provided a more detailed explanation of the two-step process of the qualified immunity analysis:

> Under step one of the Saucier analysis, if the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. Saucier, 533 U.S. at 201. This is not to say, however, the defendant official is entitled to qualified immunity. Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim. See Brosseau v. Haugen, 543 U.S. 194, 201 (2004) (Breyer, J., concurring) (distinguishing Saucier's step one as the "constitutional question," and step two as the "qualified immunity question"). See generally Wright v. Philadelphia, 409 F.3d 595, 604-05 (3d Cir. 2005) (Smith, J., concurring).

Ambrose v. Young, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007).

**B. Prisoner Mail Claims**.

The Eighth Circuit has acknowledged "the delicate balance required to weigh the constitutional rights of inmates against legitimate regulations imposed by those charged with the 'inordinately difficult task of operating a prison.'" Thongvanh v. Thalacker, 17 F.3d 256, 258 (8th Cir. 1994) (quoting Quinn v. Nix, 983 F.2d 115, 118 (8th Cir.1993)). It is well settled that convicted persons "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). These retained First Amendment rights include the right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). "Conversely, prison officials have a duty to maintain security within the prison, and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail." Thongvanh, 17 F.3d at 258-59. Prison officials do not commit constitutional violations by reading prisoners' outgoing nonprivileged mail. Gassler v. Wood, 14 F.3d 406, 408 n.5 (8th Cir. 1994); see, e.g., Smith v. Delo, 995 F.2d 827, 830 (8th Cir. 1993) (holding that prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats or evidence of illegal activity).

In an attempt to accommodate both a prison's need for security and prisoners' rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. In Wolff v. McDonnell, 418 U.S. 539, 577 (1974), the Supreme Court considered a prisoner's claim against a state prison policy which permitted the opening of incoming mail from an attorney by prison officials in the presence of the prisoner. The Court expressed doubt that such a policy infringed the prisoner's First, Sixth or Fourteenth

10

Amendment rights because "the constitutional status of the rights asserted, as applied in this situation, is far from clear." Id. at 575. The Court upheld the constitutionality of the mail policy regardless of "which, if any, of the asserted rights are operative here," id. at 576-77, and held that "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, [prison officials] have done all, and perhaps even more, than the Constitution requires." Id.; see also Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981) ("Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."); cf. Harrod v. Halford, 773 F.2d 234 (8th Cir. 1985) (prison mail policy which allowed officials to open mail from a legal source outside a prisoner's presence if the mail was not marked privileged, confidential, attorney/client privileged or with a similar marking did not violate the prisoner's First, Sixth and Fourteenth Amendment rights).

The Eighth Circuit considered an issue of opening incoming legal mail addressed to a prisoner in Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997). In Gardner, the Court held:

> The act of opening incoming mail does not injure an inmate's right to access the courts. The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband. Given this limited purpose, inadvertent opening of legal mail cannot be actionable under § 1983, particularly when it is followed by the corrective action [defendant] took after she opened [plaintiff's] envelope on March 1, because '[t]o assert a successful claim for denial of meaningful access to the courts . . . an inmate must demonstrate that he suffered prejudice.' Berdella v. Delo, 972 F.2d 204, 210 (8th Cir. 1992).

Gardner, 109 F.3d at 431 (internal citation omitted).

The Eighth Circuit has never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action. Instead, it has agreed

11

with other circuits that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." Gardner, 109 F.3d at 431 (quoting Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990)).  In Smith, the Tenth Circuit held that one isolated incident where the plaintiff's constitutionally protected incoming mail was opened outside his presence did not give rise to a constitutional violation, where there was no evidence of an "improper motive or resulting interference" with the inmate's right to counsel or access to the courts.  899 F.2d at 944.

**C. Plaintiff's Claims**.

1. Opening of Legal Mail.

Plaintiff Stockdale alleges that the defendants violated his First, Fourth and Fourteenth Amendment rights by opening outside of his presence an outgoing envelope that plaintiff had marked "legal."  The primary allegation in the Amended Complaint appears to be that the defendants committed unlawful searches by opening plaintiff's legal mail outside of his presence.

As previously stated, plaintiff did not controvert defendants' statement of material facts, including factual allegations that (1) the envelope plaintiff marked "legal" in fact contained two smaller stamped envelopes containing letters of a non-legal nature, one to a family member and one to a media organization (Defs.' Statement of Material Facts, ¶13, Dwyer Aff., ¶ 9); and (2) Dwyer authorized the opening of the envelope outside of plaintiff's presence because Investigator Julian reported to Dwyer that an informant provided information plaintiff had been circumventing the institutional mail system by placing nonlegal mail in envelopes falsely labeled legal mail.  (Defs.' Statement of Material Facts, ¶¶ 5-10; Dwyer Aff., ¶¶ 3-8).  As a result, these facts are deemed admitted.

Plaintiff attempts to raise an issue of fact with respect to both of these points in his affidavit submitted in opposition to defendants' motion for summary judgment. Plaintiff's allegations are conclusory, however, and do not serve to establish the existence of an issue of material fact. See Parks v. City of Horseshoe Bend, Ark., 480 F.3d 837, 839 (8th Cir. 2007) (to survive summary judgment motion, nonmovant must present more than scintilla of evidence and must advance specific facts to create genuine trialworthy issue). Unsubstantiated and conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment. Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir. 1998). See also Allen v. Entergy Corp., 181 F.3d 902, 905-06 (8th Cir. 1999) (conclusory affidavit which is devoid of specific factual allegations cannot preclude summary judgment).

First, plaintiff asserts that Dwyer opened outside of his presence "an outgoing package of legal materials clearly marked as legal mail." (Stockdale Aff., ¶ 3). Plaintiff does not, however, provide any facts to support his assertion that the opened package (or envelope) contained legal materials. Plaintiff does not provide copies of the materials, and does not assert what the claimed legal materials were or to whom the materials were addressed. Nor does plaintiff deny that the envelope marked legal actually contained two smaller, nonlegal stamped envelopes. Plaintiff therefore fails to raise an issue of fact to controvert defendants' statement of fact that the envelope marked "legal" did not contain legal materials.

Plaintiff also "assert[s] that the alleged informant referred to by defendant Chuck Dwyer is nothing more than a fabrication created by said defendant in the attempt to justify his action on and after April 8, 2005," and "assert[s] that not defendant Dwyer nor defendant Larry Crawford has ever asserted that defendant Dwyer was acting on information that he or one of his subordinates had

gained from an informant and has only asserted such assertion within his motion for summary judgment and affidavit in support but at no time prior thereto." (Stockdale Aff., ¶¶ 12-13). These bare, unsubstantiated assertions by plaintiff, unsupported by evidence, do not establish the existence of a genuine issue of material fact sufficient to survive summary judgment.

Prison officials do not commit constitutional violations by opening nonlegal mail outside of an inmate's presence. Gassler, 14 F.3d at 408, n.5. In this case, although plaintiff falsely labeled the outgoing envelope as legal, the envelope did not contain legal materials. The constitutional protection for legal mail only extends to genuine legal mail, as an inmate has no constitutional right to prevent prison officials from opening or inspecting nonlegal mail. Plaintiff cannot change the status of his nonlegal mail into legal mail subject to constitutional protection by placing a false designation on the outside of the envelope.

The defendants therefore did not violate any of plaintiff's constitutional rights by opening the outgoing envelope falsely marked as "legal" outside of plaintiff's presence, and there are no factual allegations, as opposed to conclusory allegations, which would support a conclusion that there was any unconstitutional interference with truly privileged mail. Cf. Felton v. Lincoln, 429 F.Supp.2d 226, 244 (D. Mass. 2006) (where prisoner mislabeled mail as privileged and forged attorneys' return addresses on envelopes, this conduct supported prison officials' decision to open the prisoner's mail bearing the return address of an attorney). That prison officials may have violated institutional policies by opening the envelope outside of plaintiff's presence does not result in section 1983 liability. See Gardner, 109 F.3d at 430-31. Therefore, plaintiff does not allege a constitutional violation and the Court does not reach step two of the Saucier qualified immunity analysis.

Plaintiff also alleges in his opposition to the motion for summary judgment that on and after April 8, 2005, Dwyer's subordinates at SECC "continuously" opened and read the contents of incoming and outgoing legal mail between plaintiff and his then-attorney, Frank A. Conard, outside of plaintiff's presence, and would seal the envelopes with clear tape and reopen them in plaintiff's presence. (Stockdale Aff., ¶¶ 4-6). This assertion is not supported by any evidence. Plaintiff does not provide identify or provide copies of any specific legal mail that he alleges was opened outside of his presence--other than the falsely marked envelope discussed above--nor does he provide any of the allegedly opened and resealed envelopes as evidence.

This unsupported and conclusory allegation is therefore insufficient to raise a genuine issue of material fact precluding summary judgment. Cf. Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (inmate established prison's "pattern and practice" of opening legal mail outside of his presence where he alleged such opening had occurred fifteen times and presented evidence documenting five instances in a three-month period), overruled on other grounds by Lewis v. Casey, 518 U.S. 343 (1996). Defendants' uncontroverted statement of material facts establishes that after the envelope falsely marked legal was opened in Dwyer's presence, Dwyer issued a directive requiring that all of plaintiff's mail marked "legal" was to be opened and examined in plaintiff's presence, to be certain it was of a legal nature. (Defs.' Statement of Material Facts, ¶¶ 11-16; Dwyer Aff., ¶¶ 7-11). Defendants also submitted copies of Interoffice Communications kept in the course of business at SECC, dated between April 14, 2005 and June 9, 2005, which directed SECC staff to open legal mail addressed to plaintiff in his presence to insure that the contents were of a legal nature. These documents indicate the date, time and the name of the SECC staff person who inspected plaintiff's

mail. (Defs.' Statement of Material Facts, ¶¶ 15-20; Defs.' Ex. E).[3] The defendants are therefore entitled to summary judgment on this claim.

### 2. Directive Regarding Mail.

Plaintiff also alleges that Dwyer's issuance of the directive that plaintiff's legal mail be opened in plaintiff's presence violates his constitutional rights. This challenge also fails to assert a constitutional violation.

Prisoners' rights to send and receive mail may be limited by prison regulations that are reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. Deference is given to prison officials in order to avoid "hamper[ing] their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Id. The Eighth Circuit has held that prison officials may institute a policy of censoring or withholding certain types of mail if: "(1) the regulation or practice furthers 'an important or substantial government interest unrelated to the suppression of expression,' such as institutional security, and (2) 'the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" McMaster v. Pung, 984 F.2d 948, 952 (8th Cir. 1993) (quoting Valiant-Bey v. Morris, 829 F.2d 1441, 1443 (8th Cir. 1987)). In McMaster, the Eighth Circuit held that correctional officers were justified in inspecting an inmate's legal mail to and from

---

[3]Plaintiff attempts to raise an issue of fact by asserting that Dwyer's affidavit contradicts itself. Specifically, plaintiff asserts that although Dwyer swore in his affidavit that all examinations of Stockdale's legal mail occurred in his presence, Dwyer states in the same affidavit that he told Mr. Julian to open a package of plaintiff's legal mail outside of plaintiff's presence. (See Pl.'s Statement of Uncontroverted Material Facts, ¶ 5). This Court has found as a fact and the defendants admit that Julian and Dwyer opened, outside of plaintiff's presence, a piece of plaintiff's mail which was marked legal. Dwyer's affidavit avers that after the piece of mail was opened outside of plaintiff's presence, Dwyer issued a directive that all of plaintiff's legal mail was to be opened in plaintiff's presence. There is no inconsistency in the affidavit.

his attorney in the inmate's presence after learning that plaintiff and the attorney had an intimate relationship.

The MDOC has promulgated policies and procedures regulating how offender mail is to be processed. IS13-1.1, Offender Mail Procedures, dictates the instances when offender legal mail may be opened and inspected. (Defs.' Ex. G, IS13-1.1.) The directive requiring the monitoring of plaintiff's legal mail complied with IS13-1.1. Information was received from an informant that plaintiff was sending outgoing non-legal mail using the privileged/legal mail process. (Dwyer Aff., ¶¶ 4, 8). When an inmate attempts to send non-legal material through the legal mail process, he is attempting to avoid the institution's screening process, and this is considered an automatic security threat. (Id., ¶ 6).

The directive issued by Dwyer required that all of plaintiff's mail marked as "legal" be inspected in his presence to ensure that it was actually of a legal nature. (Id., ¶ 11; Defs.' Ex. E). If the mail was not legal, plaintiff would be issued a conduct violation. (Id., ¶ 12; see Defs.' Ex. E). If the mail was legal, it was re-sealed and returned with a cover letter to the mailroom for further processing. (Dwyer Aff., ¶ 12, Defs.' Ex. E). Carrying out of the directive was documented via inter-office communications ("IOCs"). The IOCs recorded the date and time plaintiff's mail was inspected and indicated which SECC staff person opened plaintiff's mail. (Defs.' Ex. F). The opening of plaintiff's legal mail pursuant to directive took place in plaintiff's presence at all times. (Dwyer Aff., ¶ 11; Defs.' Ex. E).

The inspection of privileged mail by prison officials does not violate any constitutional right when officials open and inspect the mail in the inmate's presence. See Wolff, 418 U.S. at 576-77. The directive was issued by Dwyer in compliance with IS13-1.1. There was reasonable suspicion to

initiate the directive, based on (1) the information gathered from the informant, and (2) Dwyer's knowledge that plaintiff had labeled an envelope as "legal," which was discovered to contain two smaller letters of a non-legal nature. (Dwyer Aff., ¶ 9; see also Defs.' Ex. E). See Felton v. Lincoln, 429 F.Supp.2d at 244 (where prisoner mislabeled mail as privileged and forged attorneys' return addresses on envelopes, this conduct supported prison officials' decision to open the prisoner's mail bearing the return address of an attorney); cf. McMaster, 984 F.2d at 952.

Plaintiff argues that the envelope labeled as "legal" should never have been opened outside of his presence and that Dwyer violated his constitutional rights by opening it outside of his presence. As discussed above, the Court concludes that plaintiff's constitutional rights were not violated when the envelope he falsely labeled as legal was opened outside of his presence. Even if the Court were to assume for purposes of summary judgment that the envelope did contain legal mail, it would still conclude that plaintiff's constitutional rights were not violated.

The envelope was opened because an official investigation was being conducted and it was believed that plaintiff's actions created a possible security concern. (Dwyer Aff., ¶ 8). Defendants concede that MDOC mail policy IS13-1.1 was violated when the envelope plaintiff marked "legal" was opened outside of his presence. This was the only instance, however, when plaintiff's mail marked "legal" was opened outside of his presence, and therefore it was an isolated incident. The Eighth Circuit has held that "an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or access to the courts does not give rise to a constitutional violation." Gardner, 109 F.3d at 430; see also Smith, 899 F.2d at 944 (isolated incident where the plaintiff's incoming legal mail was opened outside his presence did not give rise

to a constitutional violation, where there was no evidence of an "improper motive or resulting interference" with the inmate's right to counsel or access to the courts).

In this case, there is no evidence of an improper motive regarding the opening of the envelope outside of plaintiff's presence. The evidence is that the envelope was opened because it was believed there was a possible security threat. (Dwyer Aff., ¶ 8). Cf. Wycoff v. Hedgepeth, 34 F.3d 614 (8th Cir. 1994) (finding no violation of consent decree where prison warden ordered search of plaintiff's legal papers outside of his presence after prison investigators conducting a routine inspection of plaintiff's personal effects found papers that included instructions on how to make bombs and lists of where to obtain necessary materials).

Further, neither the opening of the envelope nor the subsequent directive interfered with plaintiff's right to counsel or access to the courts. The Court notes that although plaintiff alleges that his First and Fourteenth Amendment rights were violated, he does not allege that the opening of his legal mail violated his right to access the courts or interfered with his right to counsel. Thus, plaintiff failed to plead access to the courts or interference with the right to counsel claims. The Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)). A party cannot assert a new theory of his case in defending a summary judgment motion or expand a claim to create a material issue of fact where none existed before. See Sorenson v. First Wisconsin Nat'l Bank of Milwaukee, N.A., 931 F.2d 19, 21 (8th Cir. 1991).

Even if plaintiff had properly alleged claims of denial of access to courts or interference with the right to counsel, to succeed on a claim for denial of access to legal materials, counsel, or the

courts, a plaintiff must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access. Johnson v. Hamilton, 452 F.3d 967, 974 (8th Cir. 2006). The scope of the right of access to the court is limited to the filing of an action attacking a sentence or challenging conditions of confinement. Cody v. Weber, 256 F.3d l764, 770 (8th Cir. 2001) (interpreting Lewis v. Casey, 518 U.S. 343 (1996)). A plaintiff must prove that a non-frivolous legal claim "had been frustrated or was being impeded." Moore v. Plaster, 266 F.3d 928, 933 (8th Cir. 2001) (quoting Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)). Conclusory claims of denial of access to counsel or the courts must fail if the plaintiff does not present any evidence or plead any facts that would support a finding of injury or prejudice. Johnson, 452 F.3d at 974.

Plaintiff fails to allege that an actual injury resulted from the directive, i.e., that there was an instance in which he was actually denied access to counsel or the courts. See Grady v. Wilken, 735 F.2d 303, 306 (8th Cir. 1984) (prisoner's access to the courts claim failed because a twenty-day mail hiatus while prisoner was in administrative segregation did not prejudice prisoner's lawsuit, no time limits expired, and no mail was sent from the district court during that time frame); see also Woods v. St. Louis Justice Ctr., 2007 WL 2409753, **10-11 (E.D. Mo. Aug. 20, 2007) (access to courts claim based on refusal to allow plaintiff to contact attorney by free telephone call was dismissed where plaintiff did not allege that he suffered any prejudice or actual injury as a result).

Plaintiff makes the conclusory allegation in his affidavit that on one or more occasions when legal mail was opened outside his presence, not all of the materials were placed back into the envelope and sent out of the institution. (See Stockdale Aff., ¶ 10). Plaintiff provides no facts to support this assertion, such as what the materials were, to whom they were sent, or how plaintiff knows materials were missing. Nor does plaintiff provide any documentary evidence to support his

allegation. Plaintiff's affidavit mentions that he had "ongoing legal litigation" being handled by his former attorney, Mr. Conard, but does not indicate the nature of this litigation. (Stockdale Aff., ¶ 14). Plaintiff does not allege in his affidavit that he suffered any prejudice or actual injury.

Plaintiff also submits the affidavit of Mr. Conard, which states that "tamper[ing] with" plaintiff's legal mail "severely obstructed [counsel's] relationship with [plaintiff]," "obstructed [counsel's] ability to properly represent him in a variety of pending matters and . . . impaired our ability to effectively communicate confidential and/or otherwise sensitive information." (Conard Aff., Pl.'s Ex. B). Conard states that he contacted the defendants concerning the issue, and "[d]uring this time, thousands of dollars in additional and unnecessary legal expenses were incurred by my client while attempting to resolve this matter." (Id.)

The attorney's affidavit is conclusory and fails to establish the existence of a genuine issue of material fact concerning denial of access to the courts or interference with the right to counsel. The affidavit does not indicate what pending matters were allegedly obstructed, the nature of those matter, or state any facts concerning the effect the alleged obstruction had on the pending matters. [4] Nor does the affidavit provide any evidence to support the bare assertion that plaintiff's ability to effectively communicate confidential information to his attorney was compromised. Finally, neither plaintiff nor Mr. Conard allege that any interference with their ability to communicate effectively impeded plaintiff's access to the courts. As a result, plaintiff's claims fail. See Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam) (plaintiff failed to state a constitutional claim relating to access

---

[4]The conclusory assertion that fees were incurred is insufficient to raise a genuine issue of material fact, particularly as plaintiff has not adequately pleaded an access to courts claim.

to his attorney where he did not allege how being denied access to his attorney impeded his access to the courts).

        3. <u>Fourth Amendment Claims</u>.

Plaintiff's Amended Complaint also asserts Fourth Amendment claims. The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. amend. IV. The Fourth Amendment protects against governmental invasions into a person's legitimate expectation of privacy, which has two components: (1) the person must have an actual expectation of privacy, and (2) the person's subjective expectation must be one that society deems to be reasonable. <u>Smith v. Maryland</u>, 442 U.S. 735, 740 (1979).

Some constitutional rights are necessarily limited due to considerations inherent in a penal system. <u>O'Lone</u>, 482 U.S. at 348. Given the realities of institutional confinement, any reasonable expectation of privacy an inmate retains is necessarily of diminished scope. <u>Bell</u>, 441 U.S. at 557. Courts have consistently recognized that the Fourth Amendment rights of prisoners are limited. <u>See</u>, <u>e.g.</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984) (inmate had no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment). Although inmates do not forfeit all constitutional protections by reason of their confinement in prison, <u>Wolff</u>, 418 U.S. at 555-56, the threshold determination is whether a prisoner's expectation is "legitimate" or "reasonable."

In <u>Stroud v. United States</u>, 251 U.S. 15, 21-22 (1919), the Supreme Court held there was no violation of the Fourth Amendment when letters written by a prisoner were intercepted by prison personnel and subsequently introduced against him at trial. The Court noted that the letters came into prison officials' possession under established practice which was reasonably designed to promote

institutional discipline.  Id. at 21.  Subsequent to Stroud, the Eighth Circuit has held that prison officials do not violate an inmate's Fourth Amendment rights by inspecting the inmate's mail.  See United States v. Kelton, 791 F.2d 101, 103 (8th Cir. 1986) (prisoner's Fourth Amendment rights were not violated when prison official inspected and copied prisoner's outgoing mail); Smith, 995 F.2d at 830 (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); United States v. Baumgarten, 517 F.2d 1020, 1028 (8th Cir. 1975) (where prisoner knew of official policy of reading prisoners' outgoing and unsealed mail, prisoner cannot say the state gained access to contents of a letter by unlawful search and seizure); see also Stow v. Grimaldi, 993 F.2d 1002, 1004-05 (1st Cir. 1993) (practice of requiring nonprivileged outgoing mail to be submitted for inspection in unsealed envelopes does not violate prisoners' constitutional rights); United States v. Whalen, 940 F.2d 1027, 1034-35 (7th Cir. 1991) (there is no expectation of privacy in mail that inmates are required to leave unsealed because prison officials are permitted to examine the mail to insure it does not interfere with the orderly running of the prison, contain threats, or facilitate criminal activity); Smith v. Shimp, 562 F.2d 423, 426-27 (7th Cir. 1977) (when a pretrial detainee sends non-privileged mail, he knowingly exposes it to possible inspection by jail officials and consequently yields to reasonable search and seizure).

The record establishes that the MDOC has a written policy which informs all prisoners that their nonlegal mail, both incoming and outgoing, may be inspected.  When an inmate is made aware that his nonlegal mail may be subjected to official scrutiny pursuant to institutional policies, the inmate's constitutional rights are not violated by the subsequent examination of such mail because he has no reasonable expectation of privacy in it.  Accordingly, the Court holds plaintiff had no expectation of privacy in either his incoming or outgoing nonlegal mail while incarcerated.

The MDOC mail policy also states that where a prison official's observations, experience, training and education causes a determination that inappropriate materials are concealed within privileged mail, that official may obtain approval from the institution's superintendent to examine the privileged mail, which examination "should only take place in the presence of the offender," and that the mail may be read only if probable cause exists to indicate a need. (See IS13-1.1, § III.E.4).

Under appropriate circumstances, such as where legal correspondence presents a threat to the security and orderly administration of a prison, the Eighth Circuit has held that prison officials are justified in opening an inmate's legal mail in his presence. See McMaster, 984 F.2d at 952; see also Felton, 429 F.Supp.2d at 244. The Eighth Circuit has also approved the examination of a prisoner's legal papers outside of his presence under exigent circumstances. See Wycoff, 34 F.3d at 618 ("Prison officials have a legitimate security interest in searching outside the inmate's presence for items that may be secreted in an inmate's legal papers").

The defendants have established they had reasonable suspicion and a legitimate penological interest sufficient to justify the opening of plaintiff's outgoing envelope which was falsely labeled as legal. As a result, there is no violation of plaintiff's Fourth Amendment rights. Although the opening should have occurred in plaintiff's presence, see Jensen, 648 F.2d at 1182, an isolated instance of opening outgoing legal mail, where there was no improper motive or resulting interference with the right to counsel or to access to the courts, does not give rise to a constitutional violation. See Gardner, 109 F.3d at 431. The defendants are therefore entitled to summary judgment on the Fourth Amendment claims.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff has failed to establish the existence of any constitutional violations, and that defendants' motion for summary judgment should be granted. As a result, the Court does not address defendants' arguments concerning respondeat superior, and does not reach the second step of the qualified immunity analysis.

The Court will deny as moot plaintiff's "New Motion for an Order to Compel Defense Counsel to Allow Plaintiff to Review Deposition Transcription Prior to is Use Before the Court Without Cost to Plaintiff." Defendants' summary judgment motion appeared to contain only one reference to plaintiff's deposition, and that reference did not factor in the Court's resolution of the motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**. [Doc. 36]

**IT IS FURTHER ORDERED** that plaintiff's motion to compel is **DENIED as moot**. [Doc. 39]

An appropriate judgment will accompany this memorandum and order.

*Charles A. Shaw*
_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  11th  day of October, 2007.

25